IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

———————————————————————

PATRICIA K.,

        Plaintiff,

   v.                                          Civil Action No.
                                                             8:18-CV-1093 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

———————————————————————

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

CONBOY, McKAY LAW FIRM       LAWRENCE D. HASSELER, ESQ.
307 State Street
Carthage, NY 13619

FOR DEFENDANT

HON. GRANT C. JAQUITH          JUNE L. BYUN, ESQ.
United States Attorney            Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on October 17, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: October 21, 2019
Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------x
PATRICIA K.,

                          Plaintiff,

vs.                       8:18-CV-1093

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on October 17, 2019, at the James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

| | |
|---|---|
| For Plaintiff: | CONBOY, McKAY LAW FIRM<br>Attorneys at Law<br>307 State Street<br>Carthage, New York  13619<br>  BY:  LAWRENCE D. HASSELER, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel<br>Region II<br>26 Federal Plaza, Room 3904<br>New York, New York  10278<br>  BY:  JUNE L. BYUN, ESQ. |

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1          (In Chambers, Counsel present by telephone.)

2          THE COURT: Plaintiff in this action has requested that the court vacate a determination by the Commissioner of Social Security that was adverse to her pursuant to 42 United States Code Section 405(g).

6          The background is as follows: Plaintiff was born in June of 1972, she is currently 47 years of age. She was 42 years old at the time of the alleged onset of her disability on August 21, 2014. She stands 5 foot, 2 inches in height and weighs approximately 147 pounds, plus or minus, depending on what part of the record you're looking at. Plaintiff is married and lives with her husband. She has adult children but they do not reside with them. She lives in a house in South Colton, New York. Plaintiff has a driver's license and does drive, although she claims that her driving is somewhat limited. She attended high school and two years of college.

18          In terms of work, plaintiff's last full-time employment appears to have been in August of 2014. She had part-time employment in November of 2014, August of 2015, and April of 2016. That's at pages 42 to 45 of the record and 229. In 2001 and 2002, she was a convenience store manager; 2003 to 2005, she was engaged in packing at a manufacturing facility, and then 2007 until she left her full-time position, she was a medical assistant in a clinic. Plaintiff

1  claims that she stopped working as result of her stage 3
2  liver disease and shoulder issues.
3  　　　　　Physically, plaintiff suffers from several
4  impairments, including type II diabetes which was described
5  as stable and without complications at page 903, hip pain,
6  back pain that radiates into her legs, bilateral shoulder
7  pain, GERD which was described as stable, obstructive sleep
8  apnea, obesity, sarcoidosis which was described at page 903
9  as stable, stage 3 liver disease, also described as stable,
10 COPD similarly described as stable, and/or asthma, and
11 migraines.  She suffered bilateral rotator cuff tears in or
12 about 2011.  She has been seen and treated by Dr. Michael
13 Ackland.  She had a left shoulder repair in April of 2015 and
14 is awaiting a right repair surgery, according to her
15 testimony at the time of the hearing.
16 　　　　　In terms of her pain management, especially for her
17 back, plaintiff sees Dr. Juan-Diego Harris.  She has
18 undergone epidural steroid injections, radio frequency
19 ablations, and fentanyl patches.  There is currently no plan
20 for back surgery.  She has also undergone physical therapy.
21 　　　　　Mentally, plaintiff suffers from anxiety and
22 depression.  She has not undergone any specialized treatment
23 for that mental condition and her primary physician has
24 prescribed Ativan as needed.
25 　　　　　In terms of medications, plaintiff has been

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547

1  prescribed a wide range of prescription drugs including
2  oxycodone, fentanyl, Tizanidine, Zofran, sumatriptan,
3  Chantix, Lyrica, cyclobenzaprine, Flexeril, Voltaren, Ambien,
4  Ativan, Lidocaine patches, Protonix, and Roxicodone.
5            She did, as we discussed in the oral argument, was
6  involved in a motorcycle accident in July of 2016 when the
7  motorcycle that she was either driving or riding on was
8  struck by a vehicle.  She suffered a broken collarbone.
9            In terms of activities of daily living, plaintiff
10 cooks, does dishes, does laundry, sweeps, vacuums, shops,
11 watches television.  She can socialize, she dresses, she can
12 care for her hygiene, she does some yardwork according to
13 page 189.  As was indicated, she refinished a door that took
14 two days in September of 2016, that's at 609 and 622 of the
15 administrative transcript, and in December of 2015, said that
16 she was recently hunting, that's at page 708.
17           Procedurally, plaintiff applied for Title II
18 Disability Insurance benefits protectively on January 15,
19 2015, alleging an onset date of August 21, 2014.  In that
20 application, she alleged disability based on depression,
21 anxiety, sarcoidosis, sarcoid, diverticulitis, stage 3 liver
22 disease, vomiting, weight loss, facet hypertrophy with LBP,
23 bilateral shoulder tear, complete RCT and labrum tears.
24           Administrative Law Judge Gretchen Mary Greisler
25 conducted a hearing on June 8, 2017 to address plaintiff's

15

1 application. On July 5, 2017, ALJ Greisler issued an
2 unfavorable decision finding that the plaintiff was not
3 disabled at the relevant times and therefore ineligible for
4 the benefits sought. That became a final determination of
5 the Commissioner on August 21, 2018, when the Social Security
6 Administration Appeals Council denied plaintiff's request for
7 review.
8 In her decision, ALJ Greisler applied the familiar
9 five-step test for determining disability. After concluding
10 that plaintiff was insured at all relevant times, she found
11 that plaintiff had not engaged in substantial gainful
12 activity since August 21, 2014, her alleged onset date, even
13 though she had engaged in some work subsequent to that date.
14 At step two, the ALJ found that plaintiff suffers
15 from severe impairments including bilateral rotator cuff
16 tears, lumbago, and benign positional vertigo.
17 At step three, she concluded that plaintiff's
18 conditions did not meet or medically equal any of the listed
19 presumptively disabling conditions set forth in the
20 Commissioner's regulations, specifically considering Listings
21 1.02 and 1.04.
22 After surveying the medical evidence and other
23 evidence of record, ALJ Greisler concluded that plaintiff
24 retains the residual functional capacity, or RFC, to perform
25 sedentary work with restrictions including, she can

1   occasionally stoop, balance, and climb stairs and ramps but
2   can never kneel, crouch, crawl, or climb ladders, ropes, or
3   scaffolds.  She went on to state that the claimant can
4   frequently reach but can occasionally reach overhead, she can
5   frequently use foot controls, the claimant cannot work in
6   unprotected heights, climb ladders, ropes, or scaffolds or
7   work in close proximity to dangerous machinery or moving
8   mechanical parts of equipment.
9           With that RFC, at step four, ALJ Greisler concluded
10  that plaintiff is not able to perform the requirements of her
11  past relevant work, including as a medical assistant and as
12  an order filler.
13          At step five, ALJ Greisler noted that if the
14  Medical Vocational Guidelines were applied, Rule 201.28 would
15  direct a finding of no disability.  She concluded, however,
16  that the additional limitations set forth in the RFC would
17  sufficiently erode the job base on which the grids are
18  predicated and therefore, based on the testimony of a
19  vocational expert, concluded that plaintiff is capable of
20  performing as a document preparer, a charge account clerk,
21  and an order clerk in food and beverage and therefore found
22  that plaintiff was not disabled.
23          As you know, my task is limited to determining
24  whether correct legal principles were applied and the end
25  result is supported by substantial evidence which, as the

1  Commissioner's counsel correctly noted, is defined as such
2  evidence as a reasonable mind would find sufficient to
3  support a conclusion.  It is an extremely deferential
4  standard.  It's been described as even higher than clear
5  error standard.
6         Unfortunately for Mr. Hasseler and the plaintiff,
7  the Second Circuit doesn't agree with his assessment that if
8  there's reasonable doubt, the matter should be returned.  In
9  *Brault v. Social Security Administration*, 683 F.3d 443 at 448
10 as a pin cite, Second Circuit 2012 decision, the Second
11 Circuit noted that the determination, a finding of fact must
12 be accepted unless a reasonable fact finder would have to
13 conclude otherwise based upon the record.
14        With that as a backdrop, I turn first to the
15 residual functional capacity finding.  That is defined under
16 both 20 C.F.R. Section 416.945 and SSR 96-9p, and there's 20
17 C.F.R. Section 404 Section 2 but I don't have it handy, as
18 the most plaintiff can do despite his or her limitations.
19 Under *Veino*, if there are conflicts in the record, those are
20 for the administrative law judge to resolve.  The court must
21 defer unless a reasonable fact finder would have to conclude
22 otherwise.  And of course, as a backdrop, I note that through
23 step four and certainly at the RFC stage, it is plaintiff's
24 burden to establish her limitations under *Poupore*.  And I
25 agree with Mr. Hasseler that the determination must be made

1   based on the record as a whole.

2   I note this is an extremely restrictive residual
3   functional capacity, sedentary work and further restricted.
4   It is supported by Dr. Figueroa's consultative exam which, as
5   you know, can constitute substantial evidence.  Dr. Figueroa
6   did not find any limitation, for example, on reaching, and I
7   think that a fair inference is that if there were such a
8   limitation, it would have been noted in the medical source
9   statement.  And for further support of that I note that at
10  page 444, Dr. Figueroa reported that her exam reflected
11  plaintiff has a full range of motion of shoulders, elbows,
12  forearms, and wrists bilaterally.

13  The RFC is partially supported also by Dr. Harris.
14  Dr. Harris obviously is a treating source, and as a treating
15  source, his determination would be -- his opinions would be
16  entitled to controlling weight unless they were rejected and
17  there was sufficient explanation given.  In this case, some
18  of Dr. Harris' opinions were accepted, but some were
19  rejected.  I find that the explanation given by the
20  administrative law judge for not -- for not giving
21  Dr. Harris' opinions controlling weight were sufficiently set
22  forth to provide for meaningful judicial review.  He did
23  accept the postural and foot control and environmental
24  limitations sections but did reject the walk, sit, lift,
25  stand, and reaching other than overhead as inconsistent with

1  the record treatment notes and daily activities.

2  I note that Physician Assistant LaPoint was also,
3  his opinions were also rejected, assuming that he even was an
4  acceptable medical source, his opinions clearly demonstrated
5  only a temporary restriction, and not longitudinal, and
6  therefore was properly rejected.

7  In terms of the reaching, the hypothetical given to
8  the vocational expert was precisely the residual functional
9  capacity, which argued -- which found only a limitation of
10  occasional reaching overhead, and reaching frequently
11  otherwise.  SSR 85-15 speaks to the effects of limitations on
12  reaching and basically indicates that various degrees of
13  limitations would have different effects and therefore the
14  assistance of a vocational expert may be needed to determine
15  the effects of the limitations, which is precisely what
16  happened here.  I agree with plaintiff's counsel that if
17  plaintiff were limited to occasional reaching in all
18  directions, the vocational expert did say there would not be
19  any jobs available, but that is not what the residual
20  functional capacity found.

21  In terms of side effects, again, it was plaintiff's
22  burden to establish limitations based on those side effects,
23  and I do agree with the Commissioner that the side effects
24  were referenced and were considered and were included and
25  resulted in the limitation of not working at unprotected

 1 heights, climbing ladders, ropes, or scaffolds or working in
 2 close proximity to dangerous machinery or moving mechanical
 3 parts of equipment.
 4 　　　　　The second issue is analysis of plaintiff's claims.
 5 Those are governed of course by SSR 16-03p which sets forth
 6 the two-step, the two-step analysis which must be made, and
 7 it was done in this case.  The Commissioner's -- the
 8 administrative law judge did find that the medical evidence
 9 supported the conclusion that the -- that the plaintiff's
10 conditions could reasonably be expected to cause the reported
11 symptoms, but then the SSR 16-03p requires the administrative
12 law judge to consider factors and probe whether those
13 subjective claims are accurate, it's a two-step process.  The
14 factors that are to be considered include daily activities,
15 location, duration, frequency, and intensity of pain, factors
16 that precipitate or aggravate the symptoms, type, dosage,
17 effectiveness, and side effects of medication, treatment
18 other than medication, any measures other than treatment an
19 individual uses to relieve pain, and any other factors.
20 Those were considered in this case.
21 　　　　　The administrative law judge did consider
22 activities of daily living, and I'll say one thing about the
23 5-mile issue that's at page 528 of the administrative
24 transcript.  The statement at that page is equivocal.  I
25 think it can be interpreted the way the plaintiff has

1  interpreted it, that plaintiff started walking 5 miles but
2  couldn't do it but wanted to get back but it's not entirely
3  clear, in defense of the administrative law judge.  It
4  basically says that she started walking and running 5 miles a
5  day a year ago and would like to get back into exercise.  But
6  I agree that it probably supports the conclusion that the
7  plaintiff asserts that she's no longer doing that, but I find
8  nonetheless that the error, if it was error, is harmless,
9  because there were many other indicators that plaintiff could
10 perform the residual functional capacity -- the fact that she
11 refinished a door, that she swims, that she walks in the
12 woods, she hunts, she had a new puppy, she lifted her father
13 from the floor, 300 pounds, she rode a motorcycle and was in
14 an accident in July of 2016.
15            I also note, interestingly, that even Physician's
16 Assistant LaPoint, one of her treating sources, indicated at
17 page 408 that she wasn't -- he wasn't at all sure that
18 plaintiff's limitation on range of motion was not
19 "self-limiting."
20            In any event, on balance and considering the record
21 as a whole, I think that the 16-3p was satisfied and that the
22 end result, that the reported symptoms were not as
23 plaintiff -- were not fully as plaintiff stated them, is
24 supported by substantial evidence.
25            So I will grant judgment on the pleadings to

1 defendant and dismiss plaintiff's complaint.  I'll give you a
2 short form order in due course, and thank you both for
3 excellent presentations.  I hope you have a good afternoon.
4        MR. HASSELER:  Thank you very much, Judge, for your
5 time and consideration.
6        MS. BYUN:  Thank you for your time.
7        THE COURT:  Thank you.
8            (Proceedings Adjourned, 4:09 p.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1    CERTIFICATE OF OFFICIAL REPORTER
2
3
4       I, JODI L. HIBBARD, RPR, CRR, CSR, Federal
5    Official Realtime Court Reporter, in and for the
6    United States District Court for the Northern
7    District of New York, DO HEREBY CERTIFY that
8    pursuant to Section 753, Title 28, United States
9    Code, that the foregoing is a true and correct
10   transcript of the stenographically reported
11   proceedings held in the above-entitled matter and
12   that the transcript page format is in conformance
13   with the regulations of the Judicial Conference of
14   the United States.
15
16                    Dated this 21st day of October, 2019.
17
18
19                    /S/ JODI L. HIBBARD
20                    JODI L. HIBBARD, RPR, CRR, CSR
                      Official U.S. Court Reporter
21
22
23
24
25